UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                           Case Number 17-20716

v.                                                  Honorable David M. Lawson

KELWIN DWAYNE EDWARDS,

               Defendant.

_____/

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

Defendant Kelwin Edwards has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239.  He has less than two years left on his 57-month sentence, and he has outlined a host of medical conditions that have caused his current poor health.  The government concedes that Edwards has exhausted his administrative remedies and that he has demonstrated extraordinary and compelling reasons for the relief he requests.  It argues, however, that Edwards could be a danger to society if released and that applying the factors listed in 18 U.S.C. § 3553(a) militate against it.  Because Edwards is a medically vulnerable individual who has served more than half of his prison sentence and is confined at a Bureau of Prisons (BOP) facility that has done a poor job of limiting the spread of the novel coronavirus, the relevant factors favor Edwards's position. The Court will grant the motion.

I.

Edwards pleaded guilty to one charge of possessing a controlled substance with intent to distribute.  On February 24, 2020, he was sentenced to 57 months in prison, to be served concurrently with a term on his separate state court conviction on other charges.  Due to credits

for his extensive time in pretrial detention, the defendant appears to have served approximately 33 months or around 57% of the custodial term.  Public records of the BOP indicate that the defendant is scheduled to be released from prison on November 29, 2021.

On July 6, 2020, Edwards filed his *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  In his motion, Edwards argues that he is qualified for release based on his history of seizures, enlarged heart, and history of abdominal issues requiring past and future surgery.  The Court appointed counsel and set deadlines for both sides to complete their briefing on the motion.  The government filed a response in opposition, and counsel for Mr. Edwards filed a supplemental reply.

Edwards presently is confined by the Bureau of Prisons (BOP) at FCI Milan in Michigan, a minimum-security facility that houses roughly 1,362 inmates.  As of August 17, 2020, two inmates and one staff member were infected with COVID-19, three inmates had died from COVID-19, and 92 inmates had been infected and recovered from the virus.  *See* https://www.bop.gov/coronavirus/.  According to a recent report, 55 staff have tested positive, 54 have recovered and returned to work, and one is pending recovery.  The report does not disclose how many staff or inmates have been tested.

Edwards is 51 years old and suffers from seizures and cardiac and abdominal issues.  He contends that those conditions increase the risk to his health posed by the ongoing coronavirus pandemic.  In a supplemental brief filed by counsel, Edwards further explains that his health has worsened while in prison due to the severe compromise of his mobility by the six surgical procedures he has endured to treat his abdominal condition, which still requires more surgery.  He asserts that he is barely able to walk up stairs unassisted and must pause frequently because his heart races when he does so.  He also is unable to sleep or lie on his stomach.  Because he has been

mostly bed ridden and immobile while recovering from surgeries, his body mass index (BMI) has dramatically risen as he gained weight, which only has aggravated his breathing and cardiac issues. He also asserts that he has not been told when, or even if, a needed seventh surgery can be scheduled under BOP's current movement restrictions put in place as countermeasures against the pandemic.

## II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Edwards relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with

applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government notes in its opposition that there was some recent uncertainty about the defendant's place of incarceration and timing of his requests for release that were submitted to prison authorities. However, it disclaims any procedural defense and expresses its preference for a ruling on the merits. The government also points out that the defendant's BMI of 47 constitutes a recognized serious risk factor for coronavirus exposure, and it concedes that the defendant therefore has made the required showing of extraordinary and compelling circumstances favoring early release. Nevertheless, it mounts a generalized argument that the defendant should not be released because the factors in section 3553(a) do not favor it, nor do the Sentencing Commission's policy statements. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Edwards has invoked section 3582(c)(1)(A)(i), which contains no such requirement.

Although proof of lack of dangerousness is not an element the defendant must prove under section 3582(c)(1)(A)(i), it is not irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account

- 4 -

for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

The government asserts, accurately, that drug dealers are typically seen as a threat to the community even if they have not exhibited violent behavior. Edwards has prior convictions for assault and firearms offenses and was on parole when he committed the present crimes.

The nature and circumstances of Edwards's offenses indeed are serious. However, "evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.'" *Pepper v. United States*, 562 U.S. 476, 491 (2011). "Several courts have . . . considered a defendant's rehabilitation in granting compassionate release." *United States v. Parker*, No. 98-00749, 2020 WL 2572525, at *11 (C.D. Cal. May 21, 2020) (citations omitted). That proves true even when the defendant qualified as a "career offender" and had previously been convicted of several drug offenses and for carrying a concealed weapon. *See United States v. Goins,* No. 11-20376, 2020 WL 3064452, at *1 (E.D. Mich. June 9, 2020).

Edwards has a clear prison disciplinary record. More relevant to the protection-of-the-public factor in section 3553(a), however, is that Edwards's poor health likely renders him incapable of dangerous misconduct. He has served a substantial portion of his custody term, and he asks to be released under home confinement, which will mitigate any threat to the community that he now may pose. He has a plan to live with his sister upon release, who will provide him his own room rent-free, so he will be able to self-quarantine.

The government does not point to any specific present characteristics of the defendant or his instant crime that suggest a danger to the community. It does point out that he previously was

- 5 -

convicted and served a prison term for assault and gun charges arising from an incident where he shot at another person with a pistol.  But the circumstances of the present crimes were nonviolent; although the drugs sold did allegedly cause the death of the buyer.  The government's generalized arguments based on its underlying concern about a "flood" of inmates being released into society under the present circumstances are not related in any way to any specific facts bearing on this defendant's potential to harm the community.  Although the prospect of release is not without peril, the defendant's characteristics are not sufficiently sinister to make a persuasive case that they outweigh the extreme risk to his health from continued confinement.

Moreover, Edwards will be serving a three-year term of supervised release, and the Court is authorized to extend that term by an amount "that does not exceed the unserved portion of the original term of imprisonment."  18 U.S.C. § 3582(c)(1)(A).  That extended portion can be served in home confinement.  For those reasons, it is reasonable to conclude that Edwards "'is not a danger to the safety of any other person or to the community.'"  *Cf. Lassister*, 2020 WL 3639988, at *2 n.1.  Although the crimes here were serious and involved the possession of drugs and guns, they did not involve violence.

The sentence imposed at the time was not greater than necessary to achieve the goals stated in section 3553(a).  However, reducing that sentence will not undermine those goals.

To establish extraordinary and compelling reasons for the relief he requests, Edwards points to the conditions of his physical health, arguing that he is vulnerable to complications if he were to contract COVID-19.  And he is understandably concerned about being infected with the coronavirus.  The present crisis undoubtedly stands as the greatest singular disruption to our civil society in living memory.  "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions

such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020). "[T]he crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons who are seriously obese face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).   The government concedes that the defendant's severe obesity based on a BMI of 47 qualifies as a recognized significant risk factor. *See* WebMD: What is Body Mass Index (BMI) and How Do You Calculate It?,

https://www.webmd.com/diet/obesity/qa/what-is-body-mass-index-bmi-and-how-do-you-calculate-it.

Edwards is 51 years old, so his age alone is not a recognized risk factor. However, in his supplemental brief, the defendant included a more complete recitation of his medical issues which include severe obesity, hypertension, anemia, epilepsy, gastro-esophageal reflux disease, diverticulitis, seroma, and osteoarthritis. He has undergone six surgeries but has been told that his seroma and osteoarthritis require further surgical interventions. Moreover, his immobility due to recovery from multiple surgeries has aggravated his obesity, cardiac, and respiratory issues. He also asserts that he has not been told when, or if, a needed seventh surgical procedure will be scheduled; he contends, however, that if released he would be able to seek care from local medical providers including St. Joseph Hospital, in Ann Arbor, where he was treated previously to his incarceration. The government concedes that the defendant's BMI alone is a significant risk factor that warrants compassionate release, and the defendant's other significant medical conditions, and the apparent impracticability of scheduling further needed surgical treatments, suggest that his condition, and his risk, only will continue to worsen while he is confined.

The government's position that the defendant is at low or no risk based on prophylactic measures taken by BOP to address the pandemic is not reassuring in the context of the ongoing presence of active infections among inmates at Milan, along with the recent rapid acceleration of the pandemic among the public at large. Moreover, the BOP's admitted failure to implement any comprehensive prophylactic testing program calls into doubt the undoubtedly optimistic figures that it has reported. *Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton.

The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at \*9 (N.D. Iowa June 26, 2020) ("As of June 23, 2020, no cases of COVID-19 at Yankton FPC had been reported. However, without knowing whether the BOP is actively testing inmates and staff members for COVID-19 at Yankton FPC, the lack of active confirmed cases does not mean COVID-19 is not present at the facility. Nor does it mean there will not be a future outbreak at the facility. As the Government acknowledges, despite extensive measures to prevent transmission, more federal inmates will inevitably contract COVID-19 going forward.").  The government's recounting of measures taken by BOP to address the pandemic also is less impressive considering that those measures demonstrably were ineffective at preventing an outbreak that, so far, has involved at least 101 confirmed cases of COVID-19 at FCI Milan among inmates and staff, resulting in three deaths.  These numbers create legitimate cause for concern of the virus's spread.

III.

The government does not dispute that Edwards has exhausted his administrative remedies and concedes that he has established "extraordinary and compelling" reasons for relief within the meaning of 18 U.S.C. 3582(c)(1)(A)(i).  The balance of the other pertinent factors weigh in favor of his request for relief.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 181) is **GRANTED**.

It is further **ORDERED** that the defendant's term of custody is **REDUCED** to time served.

It is further **ORDERED** that this order is stayed for up to fourteen days to allow the Bureau of Prisons to verify the defendant's residence and release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release after the defendant is quarantined. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, quarantine is complete, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

It is further **ORDERED** that under 18 U.S.C. § 3582(c)(1)(A), the defendant must serve a "special term" of supervised release of 14 months (in addition to the supervised release term previously ordered). During that special term, the defendant must confine himself to his place of residence, except for work, medical appointments, religious services, and purchasing necessities. The defendant will be subject to GPS location monitoring for the first 360 consecutive days of his home confinement. However, if the defendant is in full compliance with his conditions of supervised release, the probation officer, after 180 days, may discontinue GPS location monitoring. The Court will enter an amended judgment and commitment.

It is further **ORDERED** that the defendant must provide to the probation office in the district where he will be released the complete address where he will reside upon release.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  August 17, 2020